UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

SOUTHERN UNION CO. d/b/a
NEW ENGLAND GAS CO.,

     v.                                       C.A. No. 02-316-T

RHODE ISLAND PUBLIC UTILITIES
COMMISSION; RHODE ISLAND DIVISION
OF PUBLIC UTILITIES AND CARRIERS;
SHELDON WHITEHOUSE, in his capacity
as Attorney General of the State of
Rhode Island and Providence Plantations,

## MEMORANDUM AND ORDER

### Introduction

Southern Union Company ("Southern") d/b/a New England Gas Company ("NEG") brought this action for injunctive relief and for a declaratory judgment declaring that Rhode Island's "Gas Technician Statute," R.I. Gen. Laws § 39-2-23 (1956), (the "Statute") is preempted by the National Labor Relations Act, ("NLRA") 29 U.S.C. § 151 et seq. After this Court denied the parties' cross motions for summary judgment[1], Southern amended its complaint to seek a declaration that the Statute, also, is preempted by the Natural Gas Pipeline Safety Act of 1986, 49 U.S.C. § 60101 et seq., ("NGPSA").

---

[1] Southern Union Gas Co. v. R. I. Div. of Pub. Utils. and Carriers, et al., 306 F.Supp. 2d 129, 137 (D.R.I. 2004).

Southern, now, has moved for summary judgment on its NGPSA claim and, for reasons stated below, that motion is granted.

## Facts

NEG is an unincorporated division of Southern and is in the business of providing natural gas to residential and business customers in Rhode Island.   The Rhode Island Public Utilities Commission ("PUC") is a "quasi-judicial tribunal" that determines the rates and other charges that may be made by public utilities and the sufficiency of their services.   R.I. Gen. Laws § 39-1-3 (1956); Providence Gas Co. v. Burke, 419 A.2d 263, 269 (R.I. 1980). The Rhode Island Division of Public Utilities and Carriers ("DPUC") is a separate, quasi-executive body within the Department of Business Regulation that exercises regulatory authority over utilities.   Its principal function is to ensure that utilities comply with all applicable laws and regulations.   See Narragansett Elec. Co. v. Harsch, 368 A.2d 1194, 1199 (R.I. 1977) (the General Assembly "intended to segregate the judicial and administrative attributes of ratemaking and utilities regulation and to vest them separately and respectively in the commission and the administrator (or division)."). The DPUC also is a party in all hearings before the PUC. Providence Gas Co. v. Burke, 419 A.2d at 270; Narragansett Electric Co. v. Harsch, 368 A.2d at 1200.

Natural gas is transported to Rhode Island through an

interstate pipeline and is distributed to NEG's customers through a network of pipes maintained by NEG within the state. NEG employs a number of technicians who, occasionally, work on the gas lines located on or leading to its customers' premises in order to provide, terminate or restore service.

In January 2002, as a result of a collective bargaining dispute between NEG and the union representing its employees, NEG locked out its technicians and hired temporary replacements. During the lockout, the Rhode Island General Assembly enacted R.I. Gen. Laws § 39-2-23 which prohibits gas company employees from turning on or shutting off gas service unless they have two years of experience working for a gas company and are certified by the PUC. More specifically, that statute provides:

> **§ 39-2-23 Safe Termination of service - Qualified Employees.** No gas company, as described in § 39-1-2(20), shall allow their employees to terminate or restore or activate gas service unless those employees have gained relevant experience by working for a gas company at least two (2) years and have been properly trained in the safe termination or activation or restoration of gas services. The same criteria shall also apply to the periodic testing of meters. A certification process of gas service employees shall be established and enforced by the public utilities commission.

Southern argues that the gas lines on which its technicians work are part of an "intrastate natural gas pipeline facility" subject to federal regulation under NGPSA and, therefore, under NGPSA's preemption provision, a state may not impose safety standards that differ from federal standards unless the state acts

3

through a state agency that has regulatory jurisdiction over the practices in question and that is certified under NGPSA. Southern contends that, since neither the Rhode Island General Assembly nor the PUC is a certified state authority having regulatory jurisdiction over gas pipelines, § 39-2-23 is preempted.

The State defendants' argument appears to be that the activities covered by § 39-2-23 are conducted "downstream" of customers' meter shut-offs and that Congress did not intend NGPSA's reach to extend that far.   In support of their argument, the defendants cite the Natural Gas Act ("NGA"), which gives the Federal Energy Regulatory Commission ("FERC") jurisdiction over "the transportation of natural gas in interstate commerce" but not over "any other transportation . . . of natural gas or . . . the local distribution of natural gas . . ."   15 U.S.C. § 717(b).

## Summary Judgment Standard

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 656(c).   In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-moving party's

favor.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574,
586, 106 S.Ct. 1348, 1355, 89 L. Ed. 2d 538 (1986). "The party
opposing summary judgment may not create a dispute by simply
pointing to bare allegations of fact, but rather, must 'point to
specific facts that were properly asserted in its affidavits and
supporting materials, which, if established at trial, would entitle
it to prevail on these matters.'" <u>Rivera v. Rhode Island</u>, 312 F.S
upp. 2d 175, 178 (D.R.I. 2004) (quoting <u>Over the Road Drivers,
Inc., v. Transport Ins. Co.</u>, 637 F.2d 816, 818 (1st Cir. 1980)).

## <u>Analysis</u>

I.   <u>Preemption</u>

The doctrine of federal preemption is rooted in the Supremacy
Clause of the United States Constitution. U.S. Const. Art. VI, cl.
2.  Its purpose is to prevent states from enacting laws that
conflict with federal statutes or interfere with the accomplishment
of their purposes.  <u>See</u> <u>Southern Union Gas Co. v. R. I. Div. of
Pub. Util. and Carriers et al.</u>, 306 F. Supp. 2d at 133(citing
<u>Lorillard Tobacco Co. v. Reilly</u>, 533 U.S. 525, 540, 121 S. Ct.
2404, 150 L. Ed. 2d 532 (2001)).

Preemption may be either express or implied.  Express
preemption refers to cases in which Congress has specifically
stated its intent that a federal statute should supersede any state
law on the same subject.  <u>See</u> <u>Mass. Ass'n of Health Maint. Orgs. v.
Ruthardt</u>, 194 F.3d 176, 179 (1st Cir.1999).  Implied preemption

5

refers to cases in which an intent to preempt state regulation may be inferred.   See <u>Southern Union Gas Co. v. R. I. Div. Of Pub. Utils. and Carriers et als</u>, 306 F. Supp. 2d at 133.   In either case, the relevant question is "whether Congress intended that federal regulation supersede state law." <u>Norris v. Lumbermen's Mut. Cas. Co.</u>, 881 F.2d 1144, 1147 (1st Cir. 1989) (quoting <u>Louisiana Pub. Serv. Comm'n v. FCC</u>, 476 U.S. 355, 369, 106 S. Ct. 1890, 1898-99, 90 L. Ed. 2d 369 (1986)).

II.  <u>NGPSA's Preemption Provision</u>

Southern argues that NGPSA expressly preempts R.I. Gen. Laws § 39-2-23.  Southern relies on 49 U.S.C. § 60104(c) which provides, in relevant part:

> **(c) Preemption**. - A State authority <u>that has submitted a current certification under Section 60105(a)</u> of this title may adopt additional or more stringent safety standards for intrastate pipeline facilities and intrastate pipeline transportation only if those standards are compatible with the minimum standards prescribed under this chapter.  A State authority may not adopt or continue in force safety standards for interstate pipeline facilities or interstate pipeline transportation . . .

> [emphasis added]

> The relevant portion of § 60105(a) provides:

> **(a) General Requirements and Submission.** . . . the Secretary of Transportation may not prescribe or enforce safety standards and practices for an intrastate pipeline facility or intrastate pipeline transportation to the extent that the safety standards and practices are regulated by a State authority . . . that submits to the Secretary annually a certification for the facilities and transportation that complies with subsections (b) and (c) of this section.

6

Subsection (b) requires, among other things, that the certification referred to in subsection (a) contain a statement that the State authority "has regulatory jurisdiction over the standards and practices to which the certification applies," 49 U.S.C. § 60105(b)(1), and that it has adopted the applicable federal safety standards. (See 49 U.S.C. § 60105(b)(2)).

Thus, it is clear that NGPSA prohibits a state from imposing safety standards on interstate pipeline facilities and permits a state to impose safety standards on intrastate pipeline facilities only if those standards meet or exceed federal standards and are established by a "certified" state authority with regulatory jurisdiction.

In this case, it is undisputed that neither the General Assembly which enacted R.I. Gen. Laws § 39-2-23, nor the PUC to which the task of passing on the qualifications of technicians was delegated is "certified."

The defendants argue that the DPUC is a "certified" agency and that it is nothing more than an alter ego of the PUC, but they have presented nothing to support that argument. On the contrary, as already noted, the PUC is a quasi-judicial agency and the DPUC is a quasi-executive agency that is separate and distinct from the PUC. Therefore, the only question to be decided is whether the gas lines at issue are "intrastate pipeline facilities."

7

III. <u>The Applicability of NGPSA</u>

    A.   <u>The Statutory Provisions</u>

The definition of "intrastate gas pipeline facility" may be found in 49 U.S.C. § 60101(a)(9) which provides:

> (9) "intrastate gas pipeline facility" means --
> (A) a gas pipeline facility and transportation of gas within a State <u>not subject to the jurisdiction of the Commission under the Natural Gas Act</u> (15 U.S.C. § 717, et seq.); and
> (B) a gas pipeline facility transporting gas from an interstate gas pipeline in a State <u>to a direct sales customer in that State buying gas for its own consumption</u>.

[emphasis added]

The underscored language in subsection (a)(9)(A) together with the references to both interstate and intrastate pipeline facilities in section 60104(c) make it clear that Congress intended NGPSA to have a broader reach than NGA and that it apply to pipelines within a state used to deliver gas transported in interstate commerce. Therefore, the defendants' reliance on the fact that NGA limits FERC's authority to the <u>inter</u>state transportation of natural gas is misplaced.

With respect to subsection (a)(9)(B), the defendants do not contest the fact that NEG receives gas from an interstate gas pipeline and distributes it to its customers for their consumption. Rather, they assert that Congress did not intend the lines on which the acts referred to in R.I. Gen. Laws § 39-2-23 are performed to be considered part of an intrastate gas pipeline facility because

8

such activities are conducted downstream from the customers' meter shut-offs. However, the defendants have not cited any provision in NGPSA supporting that assertion. In fact, subsection (a)(9)(B) indicates a Congressional intent to treat a pipeline used to transport gas from an interstate gas pipeline directly to a consumer as an "intrastate gas pipeline facility."

Evidence that Congress intended intrastate gas pipelines to include lines that are the subject of R.I. Gen. Laws 39-2-23 also may be found in the regulations promulgated by the Secretary pursuant to 49 U.S.C. § 60102(a)(2)(A), which require that "whenever service to a customer is discontinued . . . [t]he customer's piping must be physically disconnected from the gas supply and the open pipe ends sealed." 49 C.F.R. § 192.727(d)(3). In promulgating that regulation, the Secretary clearly viewed intrastate gas pipeline facilities to include those lines on which technicians would work in order to "terminate, restore or activate gas service" to Southern's customers. That regulation is significant because the construction of a statute by an agency charged with responsibility for administering it is entitled to some deference in ascertaining Congressional intent. Chemical Mfrs. Ass'n v. NRDC, 470 U.S. 116, 125, 105 S. Ct. 1102, 1107, 84 L. Ed. 2d 90 (1985)(citing Train v. NRDC, 421 U.S. 60, 75, 87, 95 S.Ct. 1470, 1480, 1485, 43 L. Ed. 2d 731 (1975); Chevron U.S.A., Inc. v. NRDC, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694

(1984)).

B.   Collateral Estoppel

In any event, the State made the same "downstream" argument in Southern Union Co. v. Lynch, 321 F. Supp. 2d 328 (D.R.I. 2004) and that argument was expressly rejected by Judge Smith.   In Lynch, Southern contended that a Rhode Island statute requiring NEG's employees to obtain pipe fitters' licenses in order to work on pipes inside a customer's home was preempted by NGPSA.   Southern Union Co. v. Lynch, 321 F.Supp. 2d at 331.   The State argued that NGPSA does not regulate activities beyond the outlet of a customer's meter or the connection to a customer's piping but Judge Smith held that an intrastate pipeline facility does not end at the customer's meter.   Id. at 341.

Since Judge Smith's decision never was appealed, it has become final and the defendants are collaterally estopped from re-litigating the issue in this case.   Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 30 (1ˢᵗ Cir.1994) (collateral estoppel or issue preclusion bars a party from re-litigating "any factual or legal issue that was actually decided in previous litigation between the parties whether on the same or a different claim.") (internal citations omitted) (emphasis in original).[2]

_____

[2] Although the PUC and DPUC were not parties in Lynch, the State itself was a party, and the agency in that case and the agencies in this case were represented by the State's Attorney General.   Therefore, there is a sufficient identity of interest between the State, the PUC and the DPUC to make Judge Smith's

## Conclusion

For all of the foregoing reasons, Southern Union's motion for summary judgment is granted.

IT IS SO ORDERED,

*Ernest C. Torres*
Ernest C. Torres, Chief Judge
Date: February 10, 2006

---

ruling binding on them.  See <u>NLRB v. Donna-Lee Sportswear Co., Inc.</u> , 836 F.2d 31, 34-35 (1st Cir.1987)(reviewing case law). "The traditional exception to the rule that issue preclusion affects only the parties to the initial litigation has been the understanding that the privies of those parties are also bound." <u>Id.</u>  "The term 'privity' signifies that the relationship between two or more persons is such that a judgment involving one of them may justly be conclusive upon the others, although those others were not party to the lawsuit." <u>Id.</u> at 35 (quoting <u>Gill & Duffus Services, Inc. v. Nural Islam</u>, 675 F.2d 404, 405 (D.C.Cir.1982)).